## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

E.D., a Minor, by and through ）
his Parents and Next Friends, ）
ANTHONY DOUGHERTYAND ）
KATHERINE D. DOUGHERTY, ）          Civil Action No._____
                        ）
and                     ）          JURY TRIAL DEMANDED
                        ）
ANTHONY DOUGHERTY AND   ）
KATHERINE D. DOUGHERTY, ）
Individually and as Parents of E.D., ）
                        ）
     Plaintiffs, ）
                        ）
vs.                     ）
                        ）
PALMYRA R-I SCHOOL DISTRICT, ）
                        ）
     Defendant. ）

---

### COMPLAINT

---

COMES NOW the Plaintiffs, E.D., a Minor, by and through his Parents and Next Friends, Anthony Dougherty and Katherine D. Dougherty, and Anthony Dougherty and Katherine D. Dougherty, individually and as parents of E.D., by attorneys, SCHMIEDESKAMP, ROBERTSON, NEU & MITCHELL LLP, and for their complaint asserting causes of action for violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, et seq., for violations of Title II of the Americans with Disabilities Act of 2008, 42 U.S.C. §§ 12131-12134, and under 42 U.S.C. §1983, against the Defendant, PALMYRA R-1 SCHOOL DISTRICT, states as follows:

## PARTIES

1.      Plaintiffs Anthony Dougherty and Katherine D. Dougherty ("Parents") are residents of Palmyra, Marion County, Missouri. They are the parents and guardians of E.D., a minor.  Parents have filed Motions for Appointment of Next Friend contemporaneous with the filing of this Complaint.

2.      E.D. is the minor child of Anthony Dougherty and Katherine D. Dougherty and is under the care and guardianship of Anthony Dougherty and Katherine D. Dougherty.

3.      E.D. has been diagnosed with Trisomy 21, with resulting speech and language delays, associated with global development delays due to his Trisomy 21.

4.      E.D. is a qualifying student with a disability entitled to protections afforded by Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794, et seq., and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12131-12134.

5.      The Palmyra R-I School District ("District") is the local educational agency duly organized under the laws of the state of Missouri and authorized to conduct its business through its Board of Education and is responsible for providing a free public education to residents of Marion County, Missouri, which includes residents of Palmyra, Missouri.

6.      The District is a public entity and receives Federal financial assistance, thereby rendering it responsible for compliance with the legal requirements of Section 504, pursuant to 29 U.S.C. §794(b)(2)(B). As a public entity, it is also subject to Title II of the ADA, pursuant to 42 U.S.C. §12131(1)(B).

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction of a civil action under Section 504, pursuant to 29 U.S.C. §794(a), 42 U.S.C. §12133, and 28 U.S.C. §1331.

8.     This Court has original jurisdiction of a civil action under Title II of the ADA, pursuant to 28 U.S.C. §1331.

9.     This Court has original jurisdiction of a civil action under 42 U.S.C. §1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of all persons within the jurisdiction of the United States conferred by 28 U.S.C. §1343(a)(3) pursuant to 28 U.S.C. §1331.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because the Defendant District is located in Marion County, Missouri.

11.    Divisional venue is proper in the Northern Division of the Eastern District of Missouri pursuant to Local Rules 3-2.07(A)(2) and 3-2.07(B)(1).

## FACTS COMMON TO ALL CLAIMS

12.    E.D. currently is a First Grade student being home-schooled.  At the beginning of the 2015-16 school year until September 1, 2015, he was a First Grade student at Palmyra Elementary School ("PES") in the District.

13.    E.D. completed two years of pre-k at a private pre-school, as well as Kindergarten at PES in a mainstream classroom without an Individualized Education Plan ("IEP") or Section 504 Plan. E.D. made academic progress in each of the years.

14.    Both Section 504 and the ADA require the provision of educational accommodations and/or modifications (hereafter jointly referred to as "accommodations") to eligible students when such accommodations are necessary to prevent discrimination on the basis of disability in services, programs, or activities of educational organizations subject to such laws.

00376056

3

15.     Prior to Kindergarten (2014-15 school year), Parents requested the use of assistive technology and other accommodations for E.D. The District informed Plaintiffs that in order for E.D. to use assistive technology and receive accommodations, Parents were required to request authorization to do so, through either a Section 504 plan or an IEP.

16.     Prior to Kindergarten (2014-15 school year), Parents requested a Section 504 evaluation and plan. Through the evaluation process, the District determined that E.D. qualified for an Individualized Educational Plan ("IEP") under Other Health Impairment ("OHI"). At a subsequent meeting, Plaintiffs refused the IEP and again requested a Section 504 Plan. The District did not refuse the request for a Section 504 plan, rather, the District requested that the Parents agree to delay the implementation of a Section 504 Plan to allow E.D.'s teacher to get to know E.D. during Kindergarten (2014-15 school year) to assess the situation.

17.     In Kindergarten, E.D. was placed in a general education, mainstream classroom. He did not have an IEP or a Section 504 Plan.

18.     At no time during Kindergarten did the Defendant reject the request for a Section 504 plan or communicate to Plaintiffs that a Section 504 Plan could not or would not be offered based upon the Plaintiffs refusal to accept an IEP.

19.     Plaintiffs agreed to delay the Section 504 plan request through Kindergarten (2014-15 school year). During the first semester, the Defendant allowed E.D. to utilize assistive technology and other accommodations in the classroom, including an IPAD and verbal communication software.  E.D. was able to perform and progress academically in Kindergarten in a satisfactory manner. In the second semester, as the use of assistive technology and accommodations decreased, so did E.D.'s academic performance and progress.

20.     During the 2014-15 school year, as in past years, Parent Katherine Dougherty advocated on behalf of other students of the District with disabilities, and their parents, regarding the District's provision of IDEA and Section 504 services and accommodations, challenging the District's implementation of IDEA, Section 504 and Title II of the ADA.

21.     In April 2015, at the end of the 3rd quarter, E.D. was referred for an IDEA evaluation. Specifically, a Notice of Action was sent by the Defendant to Plaintiffs on April 24, 2015.

22.     On April 30, 2015, Parents sent a letter to the Defendant requesting changes to the Notice of Action. Specifically, Parents requested that either one of E.D.'s parents or E.D.'s private occupational and speech therapists be present during the evaluations or Parents would not consent to the evaluations in these areas. Further, Parents advised the Defendant that no further District evaluations were necessary in the areas of Intellectual/Cognitive, Social/Emotional Behavior and Adaptive Behavior, because evaluations and medical data in those areas were already completed privately and the Parents sought a Section 504 evaluation and Plan; thus, refused consent for evaluations in those areas. These privately completed evaluations and data were made available to the Defendant by Parents.

23.     On May 5, 2015, the District acknowledged receipt of Parents refusal to consent to the IDEA evaluation.  The District did not meet with or reach out to Parents to discuss the April 30 letter; but, instead, advised Parents that it would proceed with an eligibility determination under IDEA without further evaluation and without consent of Parents. The District did not seek to override the Parents' position regarding the IDEA evaluation.

24.     On May 19, 2015, pursuant to a notice from the District, a meeting was held with Parents and the multidisciplinary team to review existing data, determine initial or continued

00376056                                             5

eligibility for special education services, and develop an initial IEP. The Defendant informed Parents that E.D. was eligible for an IEP, but said eligibility was based on different categories (Language Impairment and Sound System Disorder) than the 2014-15 school year. The change in eligibility classification was not accurate and not based on current medical records provided to the District, and, therefore, an inaccurate disability qualification/identification of E.D.

25.     Thereafter, at the same meeting, Parents, prior to the development of a proposed IEP, following up on their prior refusal of consent for an IDEA evaluation, formally refused to consent to any special education and related services being offered under IDEA based on misclassifications of his disabilities, inaccuracies and the failure of the District to demonstrate why E.D. required IEP services rather than a Section 504 Plan to be afforded access to a free public education.

26.     Parents, instead, renewed and reaffirmed their request for a Section 504 evaluation and plan to allow E.D. to access a free public education.

27.     After Parents formally refused consent and requested a Section 504 plan, an IEP was unilaterally developed by the District without the consent or input of the Parents and mailed to Parents on May 19, 2015. The District-proposed IEP did not include a specific Behavior Improvement Plan or intervention plan or any goals associated with problem behaviors that may impede learning. Further, the proposed IEP placed E.D. in the regular education environment with regular education students 98% of the school minutes.

28.     At no time did the District file a due process complaint or otherwise challenge Parents refusal to consent to an IDEA evaluation and/or IEP.

29.     There is no evidence that the District has demonstrated that the education of E.D. in the regular, mainstream classroom environment with the use of supplementary aids and accommodations could not have been achieved satisfactorily.

30.     On May 22, 2015, Parents again advised the District, in writing, that they were requesting a Section 504 evaluation and plan for E.D., as they had done at the beginning of the 2014-15 school year. On the same date, Plaintiffs sent a "Parent Referral for a Section 504 Initial Evaluation" to the District.

31.     On June 15, 2015, without ever meeting with Parents, seeking a list of requested modifications or accommodations, or convening a multidisciplinary team meeting including Parents regarding the request for a Section 504 evaluation and plan, the District sent written notice to Parents that the request for a Section 504 evaluation was refused by the District. The purported basis for the refusal was that the District offered an IEP to E.D. to satisfy the IDEA and that Parents' revocation of consent for special education and related services under the IDEA served ipso facto to also refuse consent to a Section 504 Plan, services and accommodations, regardless of the Parents' desire to obtain a Section 504 Plan, services and accommodations for E.D.

32.     Parents disagreed with the District's position that the effect of their revocation of consent for provision of "special education and related services" under the IDEA was to revoke consent for evaluation and services under Section 504. Further, this was a different position by the District, as the District had previously provided Section 504 Plans for other students whose parents refused IEPs.

33.     Parents continued to advocate for E.D. to receive the disability-related education accommodations E.D. needs in his mainstream classes to access a free public education, but not

for special education or related services, for which they had refused their consent, on the basis of his qualifying disability under Section 504 and the ADA.

34.     Plaintiffs have never refused consent for E.D. to receive disability-related accommodations of the general education curriculum, to which E.D. is entitled under federal law, in his mainstream classes. Plaintiffs' refusal to consent always has been limited only to the District's proposed provision of special education and related services to E.D. under IDEA, which the Defendant has never established are necessary to meet the individual needs of E.D.

35.     On July 30, 2015, Parents filed a Notice of Appeal, under the District's administrative procedures, to challenge the District's refusal to conduct a Section 504 evaluation and implement a Section 504 Plan. In the Notice of Appeal, Parents requested the following accommodations for E.D. to allow him to access a free public education:

- Assistive technology be allowed to accommodate for any delays in speech or fine motor issues, i.e. utilize Proloquo2Go for verbal responses E.D. is unable to pronounce and IPad be used to demonstrate knowledge if E.D. demonstrates frustration or cannot perform fine motor requests;
- Digital-take picture on IPad of material if not available online;
- Teacher provide study guides or taped or note-taking assistance, such as notability app on IPad which will record lecture or Smartboard can record lecture;
- Alter test format: test content knowledge utilizing IPad, if content knowledge cannot be accurately demonstrated due to speech or fine motor issues;
- Adjust for speech intelligibility/fluency: access to Proloquo2Go at all times;
- Preferential seating: not in the back of the classroom and not at the front of classroom; E.D. performs well when he has models in front of him;
- Assistance in recording assignment, read or tape-record directions/assignments to E.D. using app on IPad or smartboard;
- Directions given in a variety of ways, i.e. verbal and/or written;
- Reduce paper/pencil Tasks by increased use of IPad;
- Extended time for completion of assignments, tests and homework;
- Access to text to speech word processing program to read text (on IPad);
- Access to speech to text software program to write (on IPad);
- Access to work predictive word processing program to assist the student in writing (on IPad and utilizing Proloquo2Go or other app);
- Access to alternative keyboard, utilizing IPad if necessary to compensate for fine motor;

- Access to dynamic display speech generating device for communication and/or behavior support, through IPad with Proloquo2Go; and
- Use of adaptive equipment, i.e. IPad, laptop, IPod, as necessary to enable E.D. to fully participate and receive and appropriate public education.

These educational accommodations are neither "special education services" nor "related services" under the IDEA.

36.     Both Section 504 and the ADA require the provision of educational accommodations to eligible students when such accommodations are necessary to prevent discrimination on the basis of disability.

37.     A hearing was set on the Notice of Appeal for September 1, 2015 before an impartial hearing officer selected by the District. Parents withdrew the Notice of Appeal on August 28, 2015, as proceeding to hearing was not necessary for the Plaintiffs to pursue their rights under Section 504, the ADA and 42 U.S.C §1983.

38.     On August 19, 2015, E.D. began the school year as a First Grade student at PES. After nine days of school, E.D. was withdrawn by Parents due to the discriminatory and retaliatory conduct of the District toward E.D. which effectively prohibited E.D. from accessing the educational programs and services of the District.

39.     While E.D. attended PES in the First Grade (2015-16 school year), he was treated differently than in Kindergarten (2014-15 school year).

40.     Specifically, in Kindergarten, in over 170 school days, E.D. received 185 minor referrals and zero major referrals, approximately one per school day. In First Grade, in eight (8) school days, E.D. received a total of 69 referrals, sixty minor and nine major.

41.     In Kindergarten, E.D. was not suspended in-school or out-of-school a single time. In First Grade, in the first 8 school days, E.D. was suspended once in-school and received three out-of-school suspensions, two for one-half day each and one for a full school day. The conduct

in First Grade for which he was suspended was similar to conduct performed by E.D. in Kindergarten, when he was not suspended.

42.     In Kindergarten, when there were discipline or behavior issues, various interventions, aside from suspensions, were used to address, correct and improve the behavior. Further, there was nearly daily verbal and/or written communication between Parents and the classroom teacher about daily performance and behavior. In First Grade, minimal interventions were used aside from resorting to suspensions. Further, communications with Parents was with the PES Principal, Lora Hillman, rather than the classroom teacher, and did not occur on a routine or timely basis when issues arose.

43.     In Kindergarten, use of assistive technology, such as an IPad and Proloquo2Go, was integrated and utilized in affording E.D. access to the academic content. Further, Parent Katherine Dougherty was allowed to work with teacher and E.D. on ways to integrate and utilize assistive technology to enable E.D. to more fully participate in the classroom education. In First Grade, while E.D. was allowed to have an IPad in the classroom, the IPad was not utilized or integrated in his classroom education, and First Grader, E.D., was left to determine when he wanted to use the device. Parent Katherine Dougherty was not allowed access to work with the classroom teacher to assist in offering ways to integrate the assistive technology.

44.     After the first week and a half of school, Parents requested that E.D. be re-assigned to a different First Grade teacher to see if that could assist in minimizing or improving any behavior issues and accommodate his disability. The District refused the request.

45.     After being suspended out-of-school for the third time in 6 days of attendance at school, on September 1, 2015, Parents withdrew E.D. from PES because he was unable to access a free public education due to the discriminatory and retaliatory conduct toward E.D. as a result

of Parents pursuing E.D.'s protected rights under Section 504 and Title II of the ADA. The discriminatory and retaliatory acts included failing to provide accommodations to allow E.D. to access a free public education and imposing discipline in a disparate manner and in excess in retaliation for Parents' exercise of protected rights on behalf of E.D. and others.

46.     The District did not evaluate E.D. for Section 504 eligibility after Parents requested said evaluation.

47.     The District did not develop or offer to develop a Section 504 Plan for E.D. at any time.

48.     The District did not offer any meaningful accommodations or services to accommodate his disability and allow him to access a free public education in First Grade (2015-2016 school year).

49.     E.D. was harmed by not having a Section 504 evaluation and plan implemented and by the District refusing to provide accommodations and services to accommodate his disability and afford him access to a free public education like other non-disabled students. The District's refusal to accommodate E.D.'s disabilities as required by Section 504 and the ADA have caused Plaintiffs' harm, including, but not limited to:

        a.      denial of E.D. to equal access to Defendant's services, programs, or activities;

        b.      denial of the opportunity for E.D. to interact with other students when he was homeschooled due to the conduct of the Defendant and its refusal to accommodate his disability;

        c.      emotional distress and pain, embarrassment, mental anguish, inconvenience, and loss of enjoyment of life for Plaintiffs' resulting from the Defendant's refusal

to reasonably accommodate E.D. and offer him access to the District's services, programs, or activities.

50.     E.D. has lost educational opportunity because the District has not provided him the services and accommodations he needs in order that his needs may be met as adequately as the needs of non-disabled students are met.

51.     Although the federal regulations implementing Section 504 provide that "[i]mplementation of an Individualized Education Program developed in accordance with [IDEA] is one means of meeting the standard" established by Section 504, *see* 34 C.F.R. §104.33(b)(2), implementation of an IEP under the IDEA is not the only means of complying with the requirements of Section 504.

52.     Plaintiffs, who refused consent for provision of special education and related services under the IDEA, do not seek an IEP for E.D. under any federal law. They seek only to ensure that E.D. receive such educational accommodations in E.D.'s mainstream classes as are necessary to prevent him from being discriminated against on the basis of disability under Section 504 and the ADA and assure his access to the educational services, programs, and activities.

53.     Section 504 provides in relevant part: "No otherwise qualified individual with a disability… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…." 29 U.S.C. §794(a).

54.     The ADA provides in relevant part: "Subject to the provision of his subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

55.    The federal regulations implementing the IDEA state: "A public agency may not use a parent's refusal to consent to one service or activity… to deny the parent or child any other services, benefit, or activity of the public agency, except as required by this part." 34 C.F.R. §300.300(d)(3).

56.    The federal regulations implementing Section 504 provide: "No qualified handicapped person shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity which receives Federal financial assistance." 34 C.F.R. §104.4(a).

57.    The Section 504 regulations also provide that a "recipient, in providing any aid, benefit, or service, may not,…on the basis of handicap…[d]eny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit or service…[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others…." 34 C.F.R. §104.4(b)(1)(i), (ii) and (iii).

58.    The federal regulations implementing the ADA provide: "No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. §35.130(a).

59.    The ADA regulations also provide that a public entity, in providing any service, may not "[d]eny a qualified individual with a disability the opportunity to participate in or

benefit from the aid, benefit, or service;…[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the … service that is not equal to that afforded others" or "[p]rovide a qualified individual with a disability with [a] … service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others …." 28 C.F.R. §35.130(b)(1)(i), (ii) and (iii).

60.     The ADA regulations further provide that a public entity "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. §35.130(b)(7).

**COUNT I**
**(Violation of Section 504 of the**
**Rehabilitation Act of 1973, 29 U.S.C. §794)**

61.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 60 as though set forth fully herein.

62.     Since July 30, 2015, the District has not offered or provided accommodations for E.D.'s disability under Section 504.

63.     Since July 30, 2015, the District has not met E.D.'s needs as adequately as the needs of other non-disabled students are met.

64.     The District acted in bad faith or with gross misjudgment and deliberately indifference to E.D.'s needs caused by his disability when it refused to evaluate or provide a Section 504 Plan or provide any meaningful services or accommodations in any, or all, areas of E.D.'s needs in First Grade (2015-16 school year).

65.     The District acted in bad faith and with gross misjudgment and deliberate indifference, thereby violating the rights of E.D. under Section 504 by:

a.     denying E.D., on the basis of his disability and his Parents' refusals to consent to an evaluation and IEP under IDEA, the opportunity to participate in and benefit from federally assisted regular education services, programs and activities, in violation of 29 U.S.C. §794(a) and 34 C.F.R. §104.4.

b.     limiting E.D.'s enjoyment of the right and opportunity to receive a public education in the regular education classroom in his neighborhood school in violation of 34 C.F.R. §104.4.

c.     failing to provide E.D. an opportunity to access, participate in, and benefit from a free public education that is at least equal to the opportunity afforded to non-disabled students, in violation of 34 C.F.R. §104.4.

66.     Through its deliberate indifference, the District deprived E.D. of access to and the benefits of its educational programs.

67.     The District engaged in intentional discrimination against E.D. based on his disability because they continued to refuse services and accommodations after they should have known they were discriminating him when Parents notified them of said discrimination in their July 30, 2015, Notice of Appeal.

68.     By virtue of the foregoing, the District has violated E.D.'s rights under Section 504 of the Rehabilitation Act by refusing and withholding the provision of disability-related accommodations in his mainstream general education classes because of E.D.'s disability and by reason of Plaintiffs' refusal of consent for the provisions of special education and related services to E.D. under the IDEA.

69.     The Plaintiffs were damaged by the District's conduct. The District has caused E.D. educational injury, loss of educational opportunity, because of its intentional discrimination, bad faith and/ gross misjudgment and deliberate indifference. Further, E.D. has been deprived of the opportunity to obtain a free public education in his resident school district as a result of the District's actions.

70.     Plaintiffs have exhausted their administrative remedies to the extent required by 20 U.S.C. §1415(1).

WHERFORE, the Plaintiffs, E.D., a Minor, by and through his Parents and Next Friends, Anthony Dougherty and Katherine D. Dougherty, and Anthony Dougherty and Katherine D. Dougherty, individually and as parents of E.D., respectfully request the Court enter judgment in their favor, against Defendant, and specifically to award them the following relief:

    (a)     adjudge and find that the District violated Section 504;

    (b)     adjudge and find that the refusal of consent for the provision of special education and related services under the IDEA does not serve to refuse or revoke consent to disability-based accommodations under Section 504 and the ADA;

    (c)     order the District to provide any and all necessary education accommodations to which E.D. is entitled under Section 504, regardless of Plaintiffs' revocation of consent for the provision of special education and related services under the IDEA, and to provide such compensatory services as may be necessary to remedy past violations of E.D.'s rights under the relevant statutes;

    (d)     Award compensatory damages and education to Plaintiffs and against District, for the damages caused by its willful violations of the Act in the amount in excess of Two Hundred Fifty Thousand Dollars ($250,000.00);

(e)     Award the Plaintiffs their attorney's fees, expert witness fees, and litigation costs incurred, in accordance with 29 U.S.C. §794a, and/or related federal regulations; and

(f)     such further relief as the Court may deem just and proper.

## COUNT II
### (Violation of Title II of the Americans with Disabilities
### Act of 1990, as amended, 42 U.S.C. §12131, *et seq.*)

71.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 60 as though set forth fully herein.

72.     The District acted in bad faith and with gross misjudgment and deliberate indifference, thereby violating the rights of E.D. under Title II of the ADA by:

        a.     subjecting E.D. to discrimination on the basis of his disability;

        b.     denying E.D. the opportunity to participate in, and the benefits of, public services and programs that are as effective and meaningful as those delivered by the District to other students;

        c.     failing to make reasonable modifications in policies, practices, and procedures to enable E.D. to participate in the District's services and programs; and

        d.     failing to provide E.D. with accommodations, auxiliary aids and services to provide him with an equal opportunity to participate in, and enjoy the benefits of, the District's services, programs and activities.

73.     By virtue of the foregoing, the District has violated E.D.'s rights under Title II of the ADA by refusing and withholding the provision of disability-related accommodations in his mainstream general education classes on the basis of his disability and by reason of Parents'

revocation of consent for the provision of special education and related services to E.D. under the IDEA.

74.     The Plaintiffs were damaged by the District's conduct. The District has caused E.D. educational injury, loss of educational opportunity, because of its discrimination, bad faith and/ gross misjudgment and deliberate indifference. Further, E.D. has been deprived of the opportunity to obtain a free public education in his resident school district as a result of the District's actions.

75.     Plaintiff has exhausted his administrative remedies to the extent required by 20 U.S.C. §1415(1).

WHERFORE, the Plaintiffs, E.D., a Minor, by and through his Parents and Next Friends, Anthony Dougherty and Katherine D. Dougherty, and Anthony Dougherty and Katherine D. Dougherty, individually and as parents of E.D., respectfully request the Court enter judgment in their favor, against Defendant, and specifically to award them the following relief:

(a)     adjudge and find that the District violated Title II of the ADA;

(b)     order the District to provide any and all necessary education accommodations and services to which E.D. is entitled under Title II of the ADA and to provide such compensatory services as may be necessary to remedy past violations of E.D.'s rights under the relevant statutes;

(c)     Award compensatory damages and education to Plaintiffs and against District, for the damages caused by its willful violations of the Act in the amount in excess of Two Hundred Fifty Thousand Dollars ($250,000.00);

(d)     Award the Plaintiffs their attorney's fees, expert witness fees, and litigation costs incurred, in accordance with 42 U.S.C. §12133, and/or related federal regulations; and

(e)     such further relief as the Court may deem just and proper.

**COUNT III**

**(Retaliation under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 and Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12131, *et seq.*)**

76.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 60 as though set forth fully herein.

77.     Section 504, and its regulations, prohibit retaliation because someone engages in protected activity concerning a disability. Specifically, 34 C.F.R. §100.7(e) provides that "[n]o recipient…shall intimidate, threaten, coerce, or discriminate against any individual for the purposes of interfering with any right or privilege secured by [the Act], or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing…."

78.     The ADA, and the regulations promulgated thereunder, governing state and local entities, protect persons from discrimination by public entities on the basis of disability, and prohibits retaliation.

79.     The Plaintiffs engaged in protected activity when Parents refused consent for an evaluation and IEP under IDEA, requested an evaluation and plan under Section 504 and accommodations under Title II of the ADA to enable E.D. to access the educational programs and services offered by the District in a mainstream classroom setting.

80.     After the Plaintiffs' exercised their protected rights and conducted protected activity, the District

        a.      refused to provide an evaluation or plan under Section 504;

        b.      refused to provide accommodations and services similar to what was provided in the 2014-15 school to Plaintiffs;

        c.      refused to provide accommodations and services to E.D. to allow E.D. access to and the ability to participate in the educational programs and services offered by the District in a mainstream classroom similar to other non-disabled students; and

        d.      imposed discipline, in particular suspensions, in an excessive manner and different than it was imposed in 2014-15, to limit, or at times deprive, E.D.'s access to and participation in the educational programs and services of the District.

81.      The actions of the District were in retaliation for the Plaintiffs engaging in protected activity.

82.      The Plaintiffs' were damaged by said retaliatory conduct.

WHERFORE, the Plaintiffs, E.D., a Minor, by and through his Parents and Next Friends, Anthony Dougherty and Katherine D. Dougherty, and Anthony Dougherty and Katherine D. Dougherty, individually and as parents of E.D., respectfully request the Court enter judgment in their favor, against Defendant, and specifically to award them the following relief:

    (a)      adjudge and find that the District violated Section 504 and Title II of the ADA by retaliating against the Plaintiffs based upon E.D. having a disability and the Plaintiffs engaging in protected activity;

    (b)      Award compensatory damages and education to Plaintiffs and against District, for the damages caused by its retaliatory conduct in the amount in excess of Two Hundred Fifty Thousand Dollars ($250,000.00);

00376056

(c)     Award the Plaintiffs their attorney's fees, expert witness fees, and litigation costs incurred, in accordance with 29 U.S.C. §794a and 42 U.S.C. §12133, and/or related federal regulations; and

(d)     such further relief as the Court may deem just and proper.

**COUNT IV**
**(Claim Under 42 U.S.C. §1983 for Violation of Procedural Due Process Under the Fourteenth Amendment to the United States Constitution)**

83.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 60 as though fully set forth herein.

84.     Plaintiffs have a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution to make educational decisions and medical decisions for E.D., their minor child.

85.     Plaintiffs have a right protected by the due process clause of the Fourteenth Amendment to the United States Constitution to make decisions regarding the upbringing of their minor child, E.D. Specifically, Parents have the right to access rights provided under Section 504 and the ADA, rather than IDEA, if they so choose and decide it is in the best interest of E.D. If the District disputes said decision, it has the right to challenge this decision under the due process provisions of IDEA, rather than unilaterally declaring and issuing an IEP without Parents' consent.

86.     In exercising those rights, Plaintiffs refused consent to IDEA evaluations or services, where the District-proposed IEP called for the provision of related services by the District.

87.     The IDEA services offered by District were limited to special education and related services to E.D. under the IDEA. The District further put forth an IEP without Parents'

consent for the IEP and without challenging Parents refusal to consent under the due process provisions of IDEA, in violation of Parents' Fourteenth Amendment rights.

88.     Plaintiffs requested that E.D. be placed in a regular classroom in District's elementary school building with accommodations provided under Section 504. Plaintiffs also specifically refused any related services which the District was requiring to be provided by the District to E.D. Plaintiffs were providing the related services, namely, occupational and speech therapy, privately.

89.     In so requesting, Parents were exercising their right to control decisions regarding the educational and medical care of E.D.

90.     The District refused to provide disability-related accommodations.

91.     The actions of District proximately and directly caused Plaintiffs grievous and permanent injury, the attendant infliction of mental and physical pain and suffering, anguish and fear.

92.     The actions of District were deliberate, willful, reckless, wanton and justify the award of punitive damages.

WHERFORE, the Plaintiffs, E.D., a Minor, by and through his Parents and Next Friends, Anthony Dougherty and Katherine D. Dougherty, and Anthony Dougherty and Katherine D. Dougherty, individually and as parents of E.D., respectfully request the Court enter judgment in their favor, against Defendant, and specifically to award them the following relief:

(a)     adjudge and find that the District violated 42 U.S.C. §1983 by affecting Parents right to be free from governmental intrusion into decision regarding the education and medical care of their child, E.D., protected by the due process clause of the Fourteenth Amendment of the United States Constitution;

(b)    Award compensatory damages and education to Plaintiffs and against District, for the damages caused by its conduct in the amount in excess of Two Hundred Fifty Thousand Dollars ($250,000.00);

(c)    Award the Plaintiffs their attorney's fees, expert witness fees, and litigation costs incurred, in accordance with 42 U.S.C. §1983 and 1988 and/or related federal regulations; and

(d)    such further relief as the Court may deem just and proper.

**E.D., a Minor, by and through his Parents and Next Friends, ANTHONY DOUGHERTY AND KATHERINE D. DOUGHERTY, and ANTHONY AND KATHERINE D. DOUGHERTY, individually and as parents of E.D.,** Plaintiffs

David G. Penn, attorney for Plaintiffs

David G. Penn, Bar No. 59184MO
Schmiedeskamp, Robertson, Neu & Mitchell LLP
Attorneys for Plaintiffs
525 Jersey
Quincy, IL 62301
T: (217) 223-3030
F: (217) 223-1005
dpenn@srnm.com